Karen A. Confoy
Allison L. Hollows
**FOX ROTHSCHILD LLP**
Princeton Pike Corporate Center
997 Lenox Drive
Lawrenceville, NJ 08648
Tel:  (609) 896-3600
Fax:  (609) 896-1469

*Of Counsel:*
Dino S. Sangiamo (*pro hac vice* application forthcoming)
Christopher J. Conoscenti (*pro hac vice* application forthcoming)
**VENABLE LLP**
750 East Pratt Street, Suite 900
Baltimore, MD 21202
Tel: (410) 244-7400
Fax: (410) 244-7742

*Attorneys for Defendants Merck & Co., Inc. and*
*Merck Sharp & Dohme Corp.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALVIN BREITNER, *et al.*, | Civil Action No. 3:18-cv-15982-PGS-TJB |
| Plaintiffs, | |
| v. | **Oral Argument Requested** |
| MERCK & CO., INC., MERCK SHARP & DOHME CORP., and MCKESSON CORP., | **Return Date: January 7, 2019**<br>*Filed Electronically* |
| Defendants. | |

## DEFENDANTS MERCK & CO., INC. AND MERCK SHARP & DOHME CORP.'S
## MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     ARGUMENT .......................................................................................................2

        A.      Merck properly removed this action because, at the time of removal,
                it had not been properly joined and served............................................2

                1.      In *Encompass*, the Third Circuit resolved a split within this
                        circuit and determined that, in diversity actions, forum
                        defendants may remove actions prior to service. .......................2

                2.      The circumstances here are indistinguishable from those in
                        *Encompass* ................................................................................5

                        a.      *Encompass* established that preservice removal
                                by a forum defendant is proper within the Third
                                Circuit ............................................................................5

                        b.      Plaintiffs fail to offer any reasonable means to
                                distinguish this case from *Encompass* ..............................8

        B.      Plaintiffs' claims are fraudulently misjoined.....................................10

                1.      Plaintiffs' claims are indistinguishable from those found to be
                        fraudulently misjoined by courts within this circuit................11

                2.      The circumstances here differ significantly from those in *Vanny
                        v. Bristol-Myers Squibb Co.*...................................................15

III.    CONCLUSION ...............................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re: Baycol Prods. Liab. Litig.*,
  MDL No. 1431, 2002 WL 32155269 (D. Minn. July 5, 2002)...............................................13

*In re Bayside Prison Litig.*,
  190 F. Supp. 2d 755 (D.N.J. 2002) .....................................................................................9

*Belbin v. Conrail (In re Paulsboro Derailment Cases)*,
  No. 13-cv-784-RBK-KMW, 2014 WL 197818 (D.N.J. Jan. 13, 2014)................................14

*Bentley v. Merck & Co.*,
  No. 17-cv-1122-HB, 2017 WL 2311299 (E.D. Pa. May 26, 2017)........................................7

*Calhoun v. Murray*,
  507 F. App'x 251 (3d Cir. 2012) .........................................................................................7

*Chaney v. Gate Pharm. (In re Diet Drugs Prods. Liab. Litig.)*,
  No. 98-cv-20478, 1203, 1999 WL 554584 (E.D. Pa. July 16, 1999)................... 11, 13, 14, 17

*Cumba v. Merck & Co., Inc.*,
  No. 08-cv-2328-DMC, 2009 WL 1351462 (D.N.J. May 12, 2009) ......................................13

*D.C. by & through Cheatham v. Abbott Labs. Inc.*,
  323 F. Supp. 3d 991 (N.D. Ill. 2018)....................................................................................6

*Encompass Ins. Co. v. Stone Mansion Rest. Inc.*,
  902 F.3d 147 (3d Cir. 2018) .......................................................................................*passim*

*Greene v. Wyeth*,
  344 F. Supp. 2d 674 (D. Nev. 2004) ...................................................................................11

*Hurt v. Dow Chem. Co.*,
  963 F.2d 1142 (8th Cir. 1992) ..............................................................................................6

*Hyatt v. Organon USA, Inc.*,
  No. 4:08-MD-1964-RWS, 2012 WL 4809163 (E.D. Mo. Oct. 10, 2012) ...........................13

*Jaeger v. Schering Corp.*,
  No. 07-cv-3465-DMC, 2007 WL 3170125 (D.N.J. Oct. 25, 2007).......................................9

*In re Propecia Prod. Liab. Litig.*,
  No. 12-cv-2049-JG-VVP, 2013 WL 3729570 (E.D.N.Y. May 17, 2013) ............................11

*In re Kaiser Aluminum Corp.*,
   456 F.3d 328 (3d Cir. 2006) ............................................................................3

*In re Rezulin Prods. Liab. Litig.*,
   168 F. Supp. 2d 136 (S.D.N.Y. 2001) ............................................................12

*Ripley v. Eon Labs Inc.*,
   622 F. Supp. 2d 137 (D.N.J. 2007) ...............................................................6, 9

*Rogers v. Grewal*,
   No. 3:18-cv-01544-BRM-DEA, 2018 WL 2298359 (D.N.J. May 21, 2018).........8

*Sullivan v. Novartis Pharms. Corp.*,
   575 F. Supp. 2d 640 (D.N.J. 2008) ...............................................................3, 6

*Terry v. J.D. Streett & Co.*,
   No. 4:09-cv-01471-FRB, 2010 WL 3829201 (E.D. Mo. Sept. 23, 2010)................6

*Valido-Shade v. Wyeth, LLC (In re Diet Drugs)*,
   875 F. Supp. 2d 474 (E.D. Pa. 2012), *aff'd*,
   No. 14-4608 (3d Cir. Apr. 29, 2015)...............................................................7

*Vanny v. Bristol-Myers Squibb Co. (In re Plavix Prod. Liab. & Mktg. Litig.)*,
   MDL No. 3:13-cv-2418-FLW, 2014 WL 4954654 (D.N.J. Oct. 1, 2014) ............... 15, 16, 17

*Vujosevic v. Rafferty*,
   844 F.2d 1023 (3d Cir. 1988)...........................................................................5

*Weaver v. Am. Home Prods. Corp. (In re Diet Drugs Prods. Liab. Litig.)*,
   294 F. Supp. 2d 667 (E.D. Pa. 2003)........................................................ 11, 13, 14

*Welsh v. Merck Sharp & Dohme Corp. (In re Fosamax Prods. Liab. Litig. (No. II))*, MDL No. 2243, No. 11-cv-3045-JAP-LHG, 2012 WL 1118780 (D.N.J. Apr. 3, 2012), *aff'd*, 751 F.3d 150 (3d Cir. 2014).........................................*passim*

*Williams v. Daiichi Sankyo, Inc.*,
   13 F. Supp. 3d 426 (D.N.J. 2014) ....................................................................5

## Statutes

28 U.S.C. § 1441(b) ...............................................................................6, 18

28 U.S.C. § 1441(b)(2)........................................................................1, 3, 6

28 U.S.C. § 1442..............................................................................................7

## Other Authorities

3d Cir. R. 5.3.........................................................................................................8

Defendants Merck & Co., Inc. and Merck Sharp & Dohme Corp. (collectively, "Merck") file this memorandum in opposition to plaintiffs' motion to remand (Doc. 7).[1]

## I.    <u>INTRODUCTION</u>

Plaintiffs' motion to remand addresses two issues.  First, plaintiffs argue that the Third Circuit's decision in *Encompass Ins. Co. v. Stone Mansion Restaurant Inc.*, 902 F.3d 147, 152 (3d Cir. 2018) does not control here.   In *Encompass*, the Court held, in essentially identical circumstances as those at issue here, that 28 U.S.C. § 1441(b)(2) is "unambiguous" and that its "plain meaning precludes removal on the basis of in-state citizenship only when the defendant has been properly joined and served."   Second, plaintiffs argue that they were not fraudulently misjoined, despite the fact that plaintiffs have no connection to one another beyond their alleged inoculation with Zostavax, and despite the fact that all state and federal courts to have considered the issue in the context of the Zostavax litigation have required that any multi-plaintiff action be severed.

The Third Circuit's decision in *Encompass* is straightforward, and the principles announced therein are binding on this Court.  Put simply, and consistent with the unambiguous language of the removal statute, removal of a diversity action by a forum defendant is proper where that defendant has not been properly joined and served and where all other requirements of the

---

[1] On November 8, 2018, Merck removed 107 cases from the New Jersey Superior Court, Middlesex County.  These cases are now all pending before this Court and are the subjects of plaintiffs' motions to remand.  One hundred three (103) of those motions, all of which involve single plaintiff complaints, raise identical jurisdictional issues and will be resolved pursuant to filings in *Anderson v. Merck*, No. 3:18-cv-15844-PGS-TJB.   Four of the removed actions, including the case at issue here, involve multi-plaintiff complaints and therefore raise additional jurisdictional issues.   Merck will simultaneously file substantively identical oppositions to plaintiffs' motions to remand in each of these cases (*Breitner v. Merck*, No. 3:18-cv-15982-PGS-TJB; *Metz v. Merck*, No. 3:18-cv-15983-PGS-TJB; *Opatrny v. Merck*, No. 3:18-cv-15984-PGS-TJB; *Sherman v. Merck*, No. 3:18-cv-15985-PGS-TJB).

statute are satisfied.  As applied here, Merck's removal of this action was proper.  Separately, courts within this and other circuits hold that plaintiffs—particularly those in pharmaceutical product liability actions—are fraudulently misjoined where, as here, there is no reasonable basis for their joinder other than to defeat diversity jurisdiction.  *See, e.g., Welsh v. Merck Sharp & Dohme Corp. (In re Fosamax Prods. Liab. Litig. (No. II))*, MDL No. 2243, No. 11-cv-3045-JAP-LHG, 2012 WL 1118780, at *4-5 (D.N.J. Apr. 3, 2012) (denying remand and holding that the claims of 91 plaintiffs were fraudulently misjoined because, "given the complicated causation questions that pervade drug product liability claims, Plaintiffs' claims will require divergent questions of law and fact"), *aff'd*, 751 F.3d 150 (3d Cir. 2014).  This is particularly true here, where plaintiffs' counsel has acknowledged that New Jersey's permissive joinder rules are "clear" and New Jersey courts consistently require multi-plaintiff complaints like plaintiffs' to be severed. Because Merck properly removed this action pursuant to *Encompass*, and because plaintiffs are fraudulently misjoined and therefore the few non-diverse plaintiffs in this action do not defeat this Court's diversity jurisdiction over the case, plaintiffs' motion to remand should be denied.

## II.   ARGUMENT

### A.   Merck properly removed this action because, at the time of removal, it had not been properly joined and served.

#### 1.   In *Encompass*, the Third Circuit resolved a split within this circuit and determined that, in diversity actions, forum defendants may remove actions prior to service.

The Third Circuit's decision in *Encompass* resolves the question of whether Merck, as a forum defendant, may remove this action to federal court.  In that case, Encompass Insurance, a citizen of Illinois, brought an action against Stone Mansion Restaurant, a citizen of Pennsylvania, in the Court of Common Pleas of Allegheny County, Pennsylvania.  *Encompass*, 902 F.3d at 149. Prior to formal service, Stone Mansion removed the action to the United States District Court for

the Western District of Pennsylvania and Encompass thereafter moved to remand.  *Id.* at 150.
Encompass argued that removal was improper because of the "forum defendant rule," which
provides that "[a] civil action otherwise removable solely on the basis of [diversity jurisdiction]
may not be removed if any of the parties in interest properly joined and served as defendants is a
citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2).

The Third Circuit "conclude[d] that the language of the forum defendant rule in section
1441(b)(2) is unambiguous.  Its plain meaning precludes removal on the basis of in-state
citizenship only when the defendant has been properly joined and served."  *Encompass*, 902 F.3d
at 152.  The Court further ruled that this literal interpretation of the statute does not lead to "absurd
or bizarre results."  *Id.* (citing *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 338 (3d Cir. 2006)).
Instead, the Court reasoned that "Congress' inclusion of the phrase 'properly joined and served'
addresses a specific problem . . . with a bright-line rule," and therefore the Court's

> interpretation does not defy rationality or render the statute nonsensical or
> superfluous, because: (1) it abides by the plain meaning of the text; (2) it envisions
> a broader right of removal only in the narrow circumstances where a defendant is
> aware of an action prior to service of process with sufficient time to initiate
> removal; and (3) it protects the statute's goal without rendering any of the language
> unnecessary.

*Encompass* at 153 (footnotes omitted).

In so holding, the Third Circuit specifically addressed arguments that are identical or
analogous to those raised by plaintiffs here.  First, the Court made clear that it knew "district courts
that have considered application of the forum defendant rule to pre-service removal are split on
the issue."  *Id.* at 152 n.2.  The Court specifically referenced the case upon which plaintiffs
repeatedly rely, *Sullivan v. Novartis Pharms. Corp.*, 575 F. Supp. 2d 640, 641-43, 654 (D.N.J.
2008), as an example of a Court coming to the opposite conclusion and holding that "literal
interpretation of the forum defendant rule would lead to an absurd result."  *Encompass*, 902 F.3d

at 152 n.2. The Court was thus fully aware, by issuing a precedential, published opinion resolving a split within the circuit, that it was establishing a rule contrary to some prior district court decisions.

Second, the Third Circuit addressed the argument, made by both Encompass and plaintiffs here, that allowing preservice removal by a forum defendant encouraged defendants to use "pre-service machinations to remove a case that it otherwise could not." *Id.* at 154. The Court explained that it was

> aware of the concern that technological advances since enactment of the forum defendant rule now permit litigants to monitor dockets electronically, potentially giving defendants an advantage in a race-to-the-courthouse removal scenario. . . . If a significant number of potential defendants (1) electronically monitor dockets; (2) possess the ability to quickly determine whether to remove the matter before a would-be state court plaintiff can serve process; and (3) remove the matter contrary to Congress' intent, the legislature is well-suited to address the issue.

*Id.* at 153 n.4. Thus, there is no question that the Court considered, and rejected, any argument based on a defendant's purportedly improper monitoring of state court dockets.

Finally, the Third Circuit rejected Encompass' suggestion that Stone Mansion's "unsavory" conduct—in first agreeing to accept informal, electronic service, but then changing its mind—precluded Stone Mansion from removing the case. Instead, the Court found that "Encompass has failed to provide any support for the proposition that Stone Mansion's conduct carried preclusive effect." *Id.* at 154.

Having disposed of these issues, *Encompass* is straightforward and clearly controls here: regardless of the method by which defendants come to be aware of a state court action filed against them, the forum defendant rule does not prevent removal of an otherwise removable case that has not been properly served. As a result, Merck properly removed plaintiffs' action to federal court. The Third Circuit's opinion on this issue is binding and precedential and therefore plaintiffs' motion to remand should be denied. *See, e.g.*, *Vujosevic v. Rafferty*, 844 F.2d 1023, 1030 n.4 (3d

Cir. 1988) ("It is, of course, patent that a district court does not have the discretion to disregard controlling [Third Circuit] precedent simply because it disagrees with the reasoning behind such precedent.").

### 2. The circumstances here are indistinguishable from those in *Encompass*.

In seeking to remand this action, plaintiffs take two approaches to the challenge of avoiding the obvious implications of *Encompass*. First, plaintiffs simply ask that the Court ignore the decision and look to case law that either (1) preceded the Third Circuit's decision in *Encompass*, or (2) comes from courts outside of the Third Circuit. Second, plaintiffs attempt to distinguish their circumstances from those at issue in *Encompass*, suggesting that the Third Circuit's decision should not be applicable to the analysis here. Both of these approaches should be rejected.

### (a) *Encompass* established that preservice removal by a forum defendant is proper within the Third Circuit.

A large part of plaintiffs' motion to remand (*see* Pls.' Memo. (Doc. 7-2) at 14-25) simply requests that this Court base its decision on outdated case law, or case law from another circuit, and come to a conclusion that is directly contrary to the Third Circuit's decision in *Encompass*. Thus, plaintiffs assert that "[b]ecause Merck is a resident of the forum state, Merck's removal of this action was impermissible" (*id.* at 15), despite the Third Circuit's conclusion that Stone Mansion, a citizen of Pennsylvania, could remove its action to the Western District of Pennsylvania. Referencing cases decided before *Encompass*, plaintiffs argue that courts in this district have "summarily dismissed the precise arguments put forth by Merck in its Notice of Removal." *Id.* at 16-17 (citing *Williams v. Daiichi Sankyo, Inc.*, 13 F. Supp. 3d 426 (D.N.J. 2014); *Sullivan*, 575 F. Supp. 2d at 641-43, 654).[2] Plaintiffs then cite to cases from, among others, the

---

[2] Plaintiffs do not offer a complete picture of the pre-*Encompass* case law within this district; they simply suggest that the Court should ignore those unpublished decisions that are contrary to their

First, Seventh, Eighth, and Eleventh Circuits that purportedly support their position that "the forum-defendant rule precludes a forum defendant from removing a case based on diversity prior to being properly served." Pls.' Memo. at 18.

Even if plaintiffs' recitation of this case law were accurate,[3] it would still do nothing to change this Court's analysis, which should begin and end with the binding precedent set by the Third Circuit in *Encompass*. Thus, plaintiffs' protestations that Merck's removal of the action defeats the purpose of 28 U.S.C. § 1441(b)(2) and that a literal reading of the statute produces unreasonable or absurd results (*see* Pls.' Memo. at 15-20) must be rejected, because the Third Circuit has already conducted the exact statutory analysis that plaintiffs now seek this Court to conduct. The Third Circuit rejected the argument that it was "'inconceivable' that Congress

---

position. Pls.' Memo. at 24 n.7 (citing five cases from this district that are directly contrary to plaintiffs' position here). Plaintiffs also fail to distinguish prior published case law that supports removal of this action. *See, e.g., Ripley v. Eon Labs Inc.*, 622 F. Supp. 2d 137, 140-41 (D.N.J. 2007) (denying motion to remand and "find[ing] that the plain language of 28 U.S.C. § 1441(b) does not bar the Defendants' removal in this case because at the time that the action was removed, the Defendants had not yet been 'properly joined and served' [and] find[ing] that removal under these circumstances does not produce a result 'demonstrably at odds with Congressional intent'").

[3] Plaintiffs incorrectly assert that several circuit courts have issued controlling decisions that support their position. For example, plaintiffs argue that the Eighth Circuit has conclusively determined that an unserved forum defendant may not remove its case to federal court. *See* Pls.' Memo. at 18 (citing *Hurt v. Dow Chem. Co.*, 963 F.2d 1142, 1145 (8th Cir. 1992)). In fact, the Eighth Circuit has not resolved the split among its district courts on this issue, and *Hurt* does not discuss preservice removal at all. District courts within the Eighth Circuit have issued opinions directly contradicting plaintiffs' position here. *See, e.g., Terry v. J.D. Streett & Co.*, No. 4:09-cv-01471-FRB, 2010 WL 3829201, at *2 (E.D. Mo. Sept. 23, 2010) ("In the case at bar, defendant had not been served before it removed the case to this Court, and the forum defendant rule therefore fails to aid plaintiffs. This conclusion is supported by the cases from this circuit . . . and also by the decisions of other circuits."). Likewise, plaintiffs' assertion that "[t]he Seventh Circuit, too, finds that remand is proper when a forum defendant removes a case for diversity prior to being served" is untrue. Pls.' Memo. at 18. As recently as August 2018 a court within that circuit noted that "[t]here is no Seventh Circuit precedent on the question of how to interpret the forum defendant rule," and thereafter proceeded to reject all of the arguments made by plaintiffs here. *See D.C. by & through Cheatham v. Abbott Labs. Inc.*, 323 F. Supp. 3d 991, 993 (N.D. Ill. 2018).

intended the 'properly joined and served' language to permit an in-state defendant to remove an action by delaying formal service of process" as "unavailing," and instead held that permitting removal by an unserved forum defendant "does not contravene the apparent purpose" of the statute. *Encompass*, 902 F.3d at 153. Thus, the Third Circuit has pronounced, allowing removal by a party in the exact circumstances of Merck here "does not defy rationality or render the statute nonsensical or superfluous." *Id.* This holding is consistent with opinions issued by the court currently overseeing the federal Zostavax litigation. *See*, *Bentley v. Merck & Co.*, No. 17-cv-1122-HB, 2017 WL 2311299, at *1 (E.D. Pa. May 26, 2017) (Bartle, J.) (rejecting plaintiffs' argument "that these two cases were improperly removed because removal of an action where one of the defendants is a citizen of the forum state is not permitted"); *see also Valido-Shade v. Wyeth, LLC (In re Diet Drugs)*, 875 F. Supp. 2d 474 (E.D. Pa. 2012) (Bartle, J.) (rejecting this same argument in the context of another pharmaceutical MDL), *aff'd*, No. 14-4608 (3d Cir. Apr. 29, 2015).

Plaintiffs also use six pages of their memorandum to argue that Merck's removal of the action is procedurally "invalid [] because service was not effectuated on Merck prior to its removal." Pls.' Memo. at 20-25.[4] It would be near impossible to read the decision in *Encompass*, which was quoted at length in Merck's Notice of Removal, and come away with the good-faith belief that this argument would be availing. In the simplest terms possible: the Third Circuit held that a forum defendant properly removed an action prior to being served. Here, Merck, a forum

---

[4] In support of this argument, plaintiffs cite primarily to *Calhoun v. Murray*, 507 F. App'x 251 (3d Cir. 2012), a case that has nothing to do with diversity jurisdiction or the forum defendant rule and instead involves an action that was removed under 28 U.S.C. § 1442, the federal officer removal statute. Plaintiffs inexplicably state that Merck relied on this case in its Notice of Removal (Merck did not). Regardless, although the Court in *Calhoun* suggested that preservice removal was "premature," it refused to remand on those grounds and plaintiffs' suggestion that the Court would have remanded had the facts of the case been entirely different (*i.e.*, if the court's jurisdiction was based on diversity rather than the federal officer statute), is simply speculation that runs contrary to the reality of *Encompass*, which decisively rejects plaintiffs' argument.

defendant, removed an action prior to being served.  The Third Circuit's decision on this issue, as with its interpretation of the relevant removal statute, is binding precedent on this Court.  *See, e.g., Rogers v. Grewal*, No. 3:18-cv-01544-BRM-DEA, 2018 WL 2298359, at *3 (D.N.J. May 21, 2018) ("Decisions of the Court of Appeal for a given circuit are binding on the district courts within the circuit. . . . This Court may only set aside Third Circuit precedent [w]hen subsequent Supreme Court decisions implicate Third Circuit precedent and the Supreme Court has effectively overruled that precedent or has rendered a decision that is necessarily inconsistent with Third Circuit authority.") (citations and internal quotation marks omitted).

> **(b)     Plaintiffs fail to offer any reasonable means to distinguish this case from *Encompass*.**

Plaintiffs' attempts to distinguish their circumstances from those in *Encompass* range from the nonsensical to the inadequate.

First, plaintiffs suggest that the Third Circuit's published opinion, which it explicitly announced to be precedential, is in fact not precedential and was instead based on a "self-admittedly fact-based analysis specific to the case before it, and thus it can only be construed to apply to that case."  Pls.' Memo. at 23.  Where the Third Circuit issues an opinion that is only applicable to the facts and parties of that particular case, the Court makes that clear by stating that the opinion is "Not Precedential."  *See* 3d Cir. R. 5.3, Internal Operating P. (2018) ("An opinion, whether signed or per curiam, that appears to have value only to the trial court or the parties is designated as not precedential.").  Here, the Third Circuit designated their *Encompass* decision to be "Precedential," and the principles it announces are thus binding on district courts within the circuit.[5]  *See, e.g., In re Bayside Prison Litig.*, 190 F. Supp. 2d 755, 763 (D.N.J. 2002) ("District

_____

[5] The *Encompass* decision is designated as "PRECEDENTIAL" on page 1 of the decision published on the Third Circuit's website.  *See* http://www2.ca3.uscourts.gov/opinarch/171479p.pdf.

Courts are bound by *stare decisis* to apply the last statement of their Court of Appeals on an issue until either that Court or the Supreme Court addresses the issue.").

Second, plaintiffs suggest *Encompass* can be distinguished because the defendant in that action "agreed to waive formal service and received the complaint via email from plaintiffs' counsel." Pls.' Memo. at 24. It is not clear whether plaintiffs are arguing that the defendant in *Encompass* was actually properly served prior to removal (which is untrue and would render nearly all of the Third Circuit's opinion and analysis superfluous) or that the defendant's initial willingness to accept informal service (an offer that was later withdrawn) is in and of itself enough to distinguish *Encompass* from plaintiffs here. Regardless of the basis for the argument, it is unavailing. In *Encompass*, plaintiff failed to properly serve the defendant before removal. Here, plaintiffs failed to properly serve Merck before removal. In *Encompass*, defendant received the complaint in an email from plaintiff. Here, Merck became aware of the complaint because it had been filed, on a publicly available docket, more than four months before removal. In either scenario, the only relevant facts are that the complaints were filed and the plaintiffs failed thereafter to serve them, allowing the forum defendant to remove the action to federal court.[6] Plaintiffs' implication that Merck's conduct, in reviewing a publicly available docket, is somehow more

---

[6] Plaintiffs also attempt to distinguish their case by suggesting that Merck, in its Notice of Removal, only cited to cases in which a non-forum defendant acted to remove an action. *See* Pls.' Memo. at 23-25. Plaintiffs' argument ignores that fact that, even before *Encompass,* courts in this district allowed forum defendants to remove actions prior to service. *See, e.g.*, *Ripley*, 622 F. Supp. 2d at 140-41 (denying motion to remand after removal by a forum defendant before service); *Jaeger v. Schering Corp.*, No. 07-cv-3465-DMC, 2007 WL 3170125, *3 (D.N.J. Oct. 25, 2007) (same). More importantly, plaintiffs' argument ignores the obvious fact that, in *Encompass*, which should control this Court's decision here, the action was removed by a forum defendant. Merck, as an unserved forum defendant that removed an action prior to service, is in the exact same position as the defendant in *Encompass*.

"improper" than the defendant in *Encompass* (where the defendant reneged on a prior agreement to accept informal service by email) is absurd. Moreover, the Third Circuit specifically addressed plaintiffs' argument that Merck, by "patrol[ing] the dockets," "abused a loophole to remove this matter." Pls.' Memo. at 24. As the Third Circuit held, "[i]f a significant number of potential defendants (1) electronically monitor dockets; (2) possess the ability to quickly determine whether to remove the matter before a would-be state court plaintiff can serve process; and (3) remove the matter contrary to Congress' intent, the legislature is well-suited to address the issue." *Encompass*, 902 F.3d at 153 n.4.

For the foregoing reasons, the forum defendant rule does not prevent Merck from removing this action to federal court.

**B.      Plaintiffs' claims are fraudulently misjoined.**

Included among the 89 plaintiffs to this action are five who assert that they are residents of New Jersey. Plaintiffs argue that these plaintiffs defeat this Court's jurisdiction over the case, as they are not diverse from defendants McKesson and/or Merck respectively. Plaintiffs suggest that Merck's arguments that plaintiffs were fraudulently misjoined "should be disregarded in their entirety" because "the doctrine of fraudulent misjoinder has not been adopted by the Third Circuit." Pls.' Memo. at 7-8. While it is true that the Third Circuit has neither accepted nor rejected the doctrine of fraudulent misjoinder, courts within this and other districts—as well as other circuit courts—have approved of and applied the doctrine in cases nearly identical to plaintiffs' action here.

      1.      **Plaintiffs' claims are indistinguishable from those found to be fraudulently misjoined by courts within this circuit.**

In the context of two different pharmaceutical product liability MDLs, courts within this circuit have determined that plaintiffs' claims have been fraudulently misjoined in circumstances that are indistinguishable from those here.  *See Welsh*, 2012 WL 1118780, at *5; *Weaver v. Am. Home Prods. Corp. (In re Diet Drugs Prods. Liab. Litig.)*, 294 F. Supp. 2d 667, 678 (E.D. Pa. 2003) (Bartle, J.); *Chaney v. Gate Pharm. (In re Diet Drugs Prods. Liab. Litig.)*, No. 98-cv-20478, 1203, 1999 WL 554584, at *4 (E.D. Pa. July 16, 1999).

In each of these cases, plaintiffs attempted "to join persons from [multiple] different states into one civil action who have absolutely no connection to each other except that they each ingested" the same drug.  *Chaney,* 1999 WL 554584, at *3; *see also Welsh*, 2012 WL 1118780, at *3 (noting that fraudulent misjoinder "is particularly relevant to large pharmaceutical product liability actions" where plaintiffs from multiple states, with no connection to each other, are misjoined in a single complaint); *Weaver*, 294 F. Supp. 2d at 678 (finding that "claims of plaintiffs who have not purchased or received diet drugs from an identical source, such as a physician, hospital or diet center, do not satisfy the same transaction or occurrence requirement" of the joinder rules).  Other courts applying the fraudulent misjoinder doctrine have similarly focused on the absurdity of joining plaintiffs who received a drug at different times, from different doctors, in entirely differing circumstances.  *See, e.g.*, *In re Propecia Prod. Liab. Litig.*, No. 12-cv-2049-JG-VVP, 2013 WL 3729570, at *6 (E.D.N.Y. May 17, 2013) (noting that "the development of the [fraudulent misjoinder] doctrine in the courts, particularly in multi-plaintiff pharmaceutical actions like this one, does not serve to improperly extend federal jurisdiction, but rather promotes judicial efficiency and prevents manipulation of the court system by misjoinder of plaintiffs in state courts"); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 685 (D. Nev. 2004) (finding that the "Wyeth

11

Defendants' statutory right of removal has been frustrated by Plaintiffs' improper joinder" of unrelated, non-diverse plaintiffs and severing those plaintiffs); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 145-46 (S.D.N.Y. 2001) (prescription drug plaintiffs' claims fraudulently misjoined where they did not "allege that they received Rezulin from the same source or that they were exposed to Rezulin for similar periods of time").

Plaintiffs' attempts to distinguish their circumstances from those in the above actions are unavailing. Plaintiffs suggest that because they were administered Zostavax for the same purpose, and suffered the same vaguely described "zoster-related injuries," they were not misjoined. Pls.' Memo. at 12. This argument ignores the principles articulated in all of the cases cited above, that plaintiffs' individual circumstances in pharmaceutical product liability actions are necessarily unique. Here, each plaintiff here was inoculated, purportedly injured, and thereafter treated under individual, and unique, circumstances. Plaintiffs were vaccinated in different states, by different healthcare providers conducting different risk-benefit analyses, in different years, and thereafter allegedly experienced injuries that also manifested themselves in different ways and at different times. Moreover, by broadly describing their injuries as "zoster-related," plaintiffs avoid having to acknowledge the significant variation in "zoster-related" conditions, as well as the different areas of the body on which they can manifest and the differing levels of pain and suffering they can cause. *See Welsh*, 2012 WL 1118780, at *4 (finding fraudulent misjoinder where "[e]ach Plaintiff broadly alleges 'a long bone fracture' [but] no Plaintiff actually identifies which long bone was fractured, the type of fracture sustained, or how the fracture occurred").

The unique aspects of each plaintiffs' claims result in courts routinely finding that plaintiffs are misjoined in pharmaceutical product liability actions because "personal injury plaintiffs are . . . different people with different medical histories who separately took a drug prescribed by

different physicians under different circumstances . . . and at different points in time." *Cumba v. Merck & Co., Inc.*, No. 08-cv-2328-DMC, 2009 WL 1351462, at *1 (D.N.J. May 12, 2009) (holding that plaintiffs in a product liability action were misjoined and noting that "[t]he majority of courts to address joinder in the context of drug liability cases have found that basing joinder merely on the fact that the plaintiffs ingested the same drug and sustained injuries as a result thereof is insufficient to satisfy Rule 20(a)s 'same transaction' requirement") (citations omitted); *see also Hyatt v. Organon USA, Inc.*, No. 4:08-MD-1964-RWS, 2012 WL 4809163, at *1 (E.D. Mo. Oct. 10, 2012) (granting motion to sever because each plaintiff "was injured at different times in different states allegedly from their use of NuvaRing that was presumably prescribed by different healthcare providers").

Plaintiffs' attempt to manufacture a distinction between their case and *Welsh*, *Weaver, and Chaney* by asserting that plaintiffs are connected because "the claims asserted against Merck by each Plaintiff are all deeply based on factual allegations surrounding the actions and omissions of the Defendants, which apply equally to each Plaintiff in this matter" (Pls.' Memo. at 12), should also be rejected by this Court. *See Chaney,* 1999 WL 554584, at *4 (rejecting argument that plaintiffs were properly joined because "the facts pertaining to the Defendants' conduct are common to all of the Plaintiffs and the legal issues of duty, breach of duty, proximate cause and resulting harm are common to all of the Plaintiffs") (internal quotation marks omitted); *see also In re: Baycol Prods. Liab. Litig.*, MDL No. 1431, 2002 WL 32155269, at *2 (D. Minn. July 5, 2002) ("The fact that defendants' conduct is common to all of plaintiffs' claims and that the legal issues of duty, breach of duty and proximate cause and resulting harm are common do not satisfy [permissive joinder rules].").

As in the other cases within this circuit in which the Court found plaintiffs to be fraudulently misjoined, "each of Plaintiffs' claims inherently differs in such substantial ways as to frustrate the very purpose of permissive joinder." *Welsh*, 2012 WL 1118780, at *4; *see also Chaney,* 1999 WL 554584, at *3 ("[J]oinder of several plaintiffs who have no connection to each other in no way promotes trial convenience or expedites the adjudication of the asserted claims. Rather, the joinder of such unconnected, geographically diverse plaintiffs that present individual circumstances material to the final outcome of their respective claims would obstruct and delay the adjudication process.").

Put simply: the doctrine of fraudulent misjoinder is recognized by courts in this district and in this circuit. It has been applied in cases that cannot be distinguished from plaintiffs' action here, where pharmaceutical product liability plaintiffs with no significant connection to each other join their claims, contrary to the relevant joinder rules,[7] and in doing so thwart a defendant's right of removal. As in *Welsh*, *Weaver*, and *Chaney*, this Court should hold that plaintiffs were fraudulently misjoined and therefore the non-diverse plaintiffs do not defeat this Court's diversity jurisdiction.

---

[7] Plaintiffs also suggest that their case differs from *Weaver* in that the *Weaver* court was applying Georgia's joinder rules. As Merck explained in its Notice of Removal, state joinder rules are commonly indistinguishable from those applicable to federal courts. As the court noted in *Weaver*, "Rule 20(a) of the Federal Rules of Civil Procedure is virtually identical to" the Georgia joinder statute. 294 F. Supp. at 678. Likewise, the New Jersey joinder rule is "virtually identical to its federal counterpart." *Belbin v. Conrail (In re Paulsboro Derailment Cases)*, No. 13-cv-784-RBK-KMW, 2014 WL 197818, at *5 n.3 (D.N.J. Jan. 13, 2014). The analysis conducted by the *Weaver* court is thus the same as the analysis conducted in *Welsh* and *Chaney*, and it is the same as the analysis that will be conducted here.

      2.      **The circumstances here differ significantly from those in *Vanny v. Bristol-Myers Squibb Co.***

Plaintiffs cite repeatedly to an unpublished decision[8] from another court within this district, which, despite "concerns with the manner in which seemingly unrelated plaintiffs and non-diverse plaintiffs have joined their claims in single multiple-plaintiff actions," declined to apply the doctrine of fraudulent misjoinder. *Vanny v. Bristol-Myers Squibb Co. (In re Plavix Prod. Liab. & Mktg. Litig.)*, MDL No. 3:13-cv-2418-FLW, 3:14-cv-3610, 2014 WL 4954654, at *10 (D.N.J. Oct. 1, 2014). The *Vanny* court determined that "the arguments pertaining to misjoinder of claims should be presented to the state court for its adjudication." *Id.* at *14. The Court went on to explain:

> [T]he Removal Defendants' position as to the manner in which Plaintiffs here have pled their Complaints, including the joining of numerous potentially non-related claims, raises substantial concerns. Indeed, the instant Complaints join various claims of Plaintiffs from different states who likely have no connection to each other but for their ingestion of Plavix. In fact, the Complaints are unclear as to facts surrounding Plaintiffs' injuries: whether these Plaintiffs received Plavix from the same prescribing physician, suffered the same type of injuries, ingested Plavix for the same reasons, used Plavix for similar lengths of time, or took similar dosages of Plavix. . . . In my view, in pharmaceutical cases like the ones here, courts should be steadfast in guarding against plaintiffs' attempts at forum shopping by employing questionable procedural mechanisms, including misjoinder of claims. The question of misjoinder remains in these cases, but will be left to the sound judgment of the state court.

*Id.* The Court thus succinctly explained the serious issues with complaints, like plaintiffs' here, that seek to employ "questionable procedural mechanisms" in order to misjoin plaintiffs and avoid

---

[8] Notably, in their argument concerning the forum defendant rule, plaintiffs request that this Court ignore those unpublished decisions that do not support their position. Here, however, plaintiffs rely almost entirely on an unpublished opinion. Plaintiffs also fail to note that the *Vanny* court, in addition to considering fraudulent misjoinder, also interpreted the forum defendant rule and expressly rejected plaintiffs' argument that a "literal interpretation of the 'joined and served' language would create a bizarre result." *Vanny*, 2014 WL 4954654, at *3. Instead, the court "join[ed] the majority in finding that, so long as a properly joined forum defendant has not been served, the Removal Defendant's removal of these cases is proper under § 1441(b)." *Id.* at *5.

removal.  *Id.*  Plaintiffs here, as in *Vanny*, have no connection to each other beyond their inoculation with Zostavax.

Nevertheless, the *Vanny* court, despite acknowledging that it appeared plaintiffs were misjoined, declined to apply the fraudulent misjoinder doctrine primarily because the joinder issue should "be left to the sound judgment of the state court."  *Id.*  Here, there is no question as to the judgment of the state court.  In the New Jersey Zostavax Multicounty Litigation, Judge Hyland has ordered that "[e]ach action shall be limited to one plaintiff and/or a related household of plaintiffs. . . . All Plaintiffs listed in complaints prior to this order must move to bifurcate their claims and refile the complaints individually."  Exhibit A, Initial Order for Case Management, *In re: Zostavax Litig.*, No. MID-L-4999-18 (N.J. Super. Ct. Law Div., Aug. 24, 2018).[9]  The state court at issue has already resolved the issue that the *Vanny* court determined it could not decide: joinder of these claims is inappropriate under New Jersey law.  Plaintiffs suggest in their briefing that Judge Hyland's order does not represent a "finding that these [plaintiffs'] claims were improperly joined," but this is contrary to Judge Hyland's determination that the complaints as filed were "deficient."  Exhibit C, Case Mgmt. Conf. Tr., Sept. 27, 2018, at 7:7, 7:12, *In re: Zostavax Litig.*, No. MID-L-4999-18 (N.J. Super. Ct. Law Div.).  Moreover, it is contrary to plaintiffs' counsel's own statements to the court in the California Zostavax Judicial Coordination

---

[9] As described in Merck's Notice of Remand, Judge Bartle has issued an equivalent order in the Zostavax MDL.  *See* Exhibit B, Pretrial Order No. 8, *In re: Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*, MDL No. 2:18-md-02848-HB (Doc. 22) (Oct. 3, 2018) ("No action shall be filed with more than one plaintiff," and "[a]ll complaints heretofore filed which name more than one plaintiff . . . are severed.").  Pursuant to this Order, plaintiffs will be required to file their claims individually immediately after this case is transferred to the Zostavax MDL.  In identical circumstances, a court in this district denied a motion to remand a multi-plaintiff product liability action that was subject to transfer to an MDL because "the issue of complete diversity of citizenship is mooted by virtue of the management order requiring the severance of all existing multi-plaintiff complaints."  *Moore v. Daiichi Sankyo, Inc. (In re Benicar Prods. Liab. Litig.)*, 198 F. Supp. 3d 385, 388 (D.N.J. 2016).

Proceeding ("JCCP").  The court asked plaintiffs' counsel why the New Jersey court had ordered that all multi-plaintiff cases be severed, and plaintiffs' counsel responded that "New Jersey's rule is pretty clear on that topic, and they're pretty consistent with it."  Exhibit D, Judicial Coordination Proceeding Tr., Nov. 16, 2018, at 17:9-11, 17:24-26, Zostavax Product Cases, JCCP No. 4962 (Cal. Super. Ct.).  Thus, despite being familiar with New Jersey's rules, and despite knowing that New Jersey courts consistently require that multi-plaintiff cases be severed, plaintiffs' counsel nevertheless filed this action, misjoining more than 88 unrelated plaintiffs.

The circumstances here are therefore far more clearly cut than those in *Vanny*.  Here, this Court knows exactly how the New Jersey court will rule on the misjoinder issue, because that ruling has already occurred.  Further, this Court knows that plaintiffs' counsel is familiar with the "clear" New Jersey rules and the courts' "consistent" application of those rules.  Thus, plaintiffs' contention that "[u]nder New Jersey Rules of Court . . . the Plaintiffs have properly joined their claims based on their commonality" (Pls.' Memo. at 14), is clearly inconsistent with their attorney's arguments in another court.  Plaintiffs make that statement while fully aware that the New Jersey MCL court, applying New Jersey joinder rules, has already ordered that these plaintiffs' claims, if they are remanded back to state court, must immediately be severed.  It is in these circumstances, where plaintiffs may have "structured their complaint in order to defeat diversity jurisdiction" despite knowing that the claims were misjoined, that courts in this circuit find fraudulent misjoinder.  *Welsh*, 2012 WL 1118780, at *5; *see also Chaney*, 1999 WL 554584, at *3 ("Given Plaintiffs' vast geographic diversity and lack of reasonable connection to each other, the court finds that the attempted joinder of the nonresident Plaintiffs wrongfully deprives Defendants of their right of removal.").

In sum, this Court should conduct its analysis consistent with those courts in this circuit—and other courts throughout the country—that have found plaintiffs to be fraudulently misjoined where the only connection to one another is their common receipt of a pharmaceutical product. As such, this Court should deny plaintiffs' motion to remand.

## III.  **CONCLUSION**

Merck's removal of this action complied with the plain language of 28 U.S.C. § 1441(b) and with the precedent of the Third Circuit. Further, plaintiffs' claims were fraudulently misjoined and therefore the presence of five non-diverse plaintiffs does not defeat this Court's jurisdiction over the action. For the foregoing reasons, plaintiffs' motion to remand should be denied.

Respectfully submitted,

Dated: December 26, 2018

/s/ Karen A. Confoy
Karen A. Confoy
Allison L. Hollows
**FOX ROTHSCHILD LLP**
Princeton Pike Corporate Center
997 Lenox Drive
Lawrenceville, NJ  08648
Tel:  (609) 896-3600
Fax:  (609) 896-1469
kconfoy@foxrothschild.com
ahollows@foxrothschild.com

*Of Counsel:*
Dino S. Sangiamo (*pro hac vice* application forthcoming)
Christopher J. Conoscenti (*pro hac vice* application forthcoming)
**VENABLE LLP**
750 East Pratt Street, Suite 900
Baltimore, MD 21202
Tel: (410) 244-7400
Fax: (410) 244-7742
dssangiamo@venable.com
cjconoscenti@venable.com

18

*Attorneys for Defendants Merck & Co., Inc. and*
*Merck Sharp & Dohme Corp*