UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALVIN BREITNER, *et al.*<br><br>*Plaintiffs,*<br><br>v.<br><br>MERCK & CO., INC., MERCK SHARP & DOHME CORP., AND MCKESSON CORP.<br><br>*Defendant,* | Civil Action No.: 3:18-cv-15982 (PGS)(TJB)<br><br><br>MEMORANDUM AND ORDER |

**SHERIDAN, U.S.D.J.**

Presently before the Court is Plaintiffs' Motion to Remand this matter to the Superior Court of New Jersey pursuant to 28 U.S.C. § 1447, (ECF No. 7).

In this case, eighty-nine separate Plaintiffs are named, five of whom are from New Jersey and are non-diverse from Merck.[1] The remaining Plaintiffs are from other states. Plaintiffs allege non-specific injuries purportedly caused by Zostavax, Merck's FDA approved vaccine that protects against shingles.[2]

In addition, there is a pending application before the United States Panel on Multidistrict Litigation (MDL Panel) to transfer the matter to a centralized court in the Eastern District of Pennsylvania.

I.

The procedural history and facts are set forth below. More importantly, the parties agree

---

[1] Defendants Merck & Co., Inc., Merck Sharp & Dohme Corp., and McKesson Corp. are collectively referred to as "Merck."
[2] There are three other similar lawsuits which involve multiple Plaintiffs wherein some of the Plaintiffs are non-diverse from Merck.

1

to same.

This suit was filed on July 3, 2018. Plaintiffs did not personally serve Merck in this case prior to removal. Plaintiff contends that the personal service was delayed because Plaintiff had not been assigned a Tracking Assignment Number ("TAN") from the Clerk of the Superior Court of New Jersey, which is necessary before personal service may occur.[3]

On November 8, 2018, Merck removed this case to federal court. Within the notice of removal, Merck states that complete diversity of citizenship exists among the parties, as eighty-four of the eighty-nine Plaintiffs in this action are completely diverse from all the named Defendants. (ECF No. 1, at ¶ 16). That is, five Plaintiffs, Andree Dupree, Patricia Jardine, Ruth Cooleen, Mary Thompson, and Faith Cowart reside in New Jersey, (*See* Breitner Comp., ECF No. 1-1, at ¶¶ 11, 21, 37, 52, 62), while Merck is a New Jersey corporation with principal places of business in Kenilworth, New Jersey (*Id.* at ¶ 98-99), and McKesson Corp. is a Delaware corporation with its principal place of business in Sacramento, CA. (*Id.* at ¶ 100). In addition, Merck asserts that each Plaintiff's alleged damages exceed $75,000.

On December 7, 2018, Plaintiffs filed the motion to remand, arguing there is not complete diversity because five Plaintiffs hailed from New Jersey, where Merck resides. (ECF No. 7). Merck counters that these five Plaintiffs were fraudulently misjoined. (*Id.* at ¶32).

On December 11, 2018, Merck sought a stay of all removed cases pending transfer to the Eastern District of Pennsylvania by the Multidistrict Litigation Panel (ECF No. 8). That application was denied. *See Anderson v. Merck, et al.*, No. 18-cv-15844, ECF No 14.

On January 7, 2018, oral argument on the motion was heard.

A related case, *Anderson v. Merck, et al.*, No. 18-cv-15844, was decided to permit removal

---

[3] Merck disagrees with Plaintiffs argument about the TAN because certain provisions of the New Jersey Court Rules indicate otherwise.

2

based on a recent Third Circuit decision, which held that the forum defendant rule does not apply when personal service of the complaint did not occur prior to removal. *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3d Cir. 2018).

As part of the briefing for this motion, there were two Orders (attached as exhibits) from similar Zostavax litigation cases where there were multiple Plaintiffs named in a single suit. (*See* ECF Nos. 12-2, 12-3). In these Orders, the Courts had ordered that the complaint be severed, and further ordered each Plaintiff to file their own suit. (*Id.*) More specifically, the judge presiding over the New Jersey Zostavax Multicounty Litigation in the Superior Court of New Jersey ordered that "[e]ach action shall be limited to one plaintiff and/or a related household of plaintiffs. . . . All Plaintiffs listed in complaints prior to this order must move to bifurcate their claims and refile the complaints individually." (ECF No. 12-2, at ¶ 8(c)). Similarly, on October 3, 2018, the presiding transferee Judge sitting in the Eastern District of Pennsylvania ordered that "No action shall be filed with more than one plaintiff . . . All complaints heretofore filed which name more than one plaintiff, and where applicable, a derivative plaintiff, are severed." (ECF No. 12-3, at ¶ 1-2).

II.

Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States . . . ." 28 U.S.C. § 1441(a); *see also Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). Accordingly, a defendant can remove an action to federal court pursuant to § 1441(a) if the plaintiff could have filed it here in the first instance. After removal, a party can move to remand the action back to state court. 28 U.S.C. §1447(c). The removing party bears the burden of establishing the court's jurisdiction. *Samuel-Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). Accordingly, on

a motion to remand, the burden of demonstrating a proper basis for removal remains with the removing party. *See Carroll v. United Air Lines*, 7 F. Supp. 2d 516, 519 (D.N.J. 1998).

"The principal federal statute governing diversity jurisdiction, 28 U.S.C. § 1332, gives federal district courts original jurisdiction of all civil actions 'between . . . citizens of different States' where the amount in controversy exceeds $75,000." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81 (2005)). "This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Id.* (quoting *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010). "'A natural person is deemed to be a citizen of the state where he [or she] is domiciled. A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business.'" *Id.* (quoting *Zambelli*, 592 F.3d. at 412).

III.

Fraudulent misjoinder, otherwise known as "procedural misjoinder" "refers to a situation where a plaintiff attempts to frustrate a defendant's right to remove by joining a non-diverse party in violation of the applicable joinder rule." *Saviour v. Stavropoulos*, No. 15-5362, 2015 U.S. Dist. LEXIS 150793, at *17 (E.D. Pa. Nov. 5, 2015) (quoting *Reuter v. Medtronics, Inc.*, No. 10-3019, 2010 U.S. Dist. LEXIS 118216, at *3 (D.N.J. Nov. 5, 2010) *report and recommendation adopted*, No. 10-3019, 2010 U.S. Dist. LEXIS 144108 (D.N.J. Nov. 23, 2010)). "While fraudulent joinder tests the viability of the claims against the defendant, fraudulent misjoinder tests the procedural basis of a party's joinder." *Vanny v. Bristol-Myers Squibb Co. (In re Plavix Prod. Liab. & Mktg. Litig.)*, No. MDL No. 3:13-2418, 2014 U.S. Dist. LEXIS 142910, at *638 (D.N.J. Oct. 1, 2014) ("*Vanny*"). When the doctrine of fraudulent misjoinder is recognized, it "may operate as an exception to the complete diversity rule." *Reuter* 2010 U.S. Dist. LEXIS 118216, at *9 (first citing

4

*In re Prempro Prods. Liability Litig.*, 591 F.3d 613, 620 (8th Cir. 2010); then citing *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)). Joinder is considered egregious when there is "no real connection" between each plaintiffs' underlying claims. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds*, 204 F.3d 1069 (11th Cir. 2000).

The doctrine of fraudulent misjoinder has been applied in pharmaceutical cases where courts determined that plaintiffs may not be joined under Rule 20 of the Federal Rules of Civil Procedure, when the plaintiffs "allege that they took the same drug and suffered similar injuries, but took the drug at different times, received it from different sources, and live in different states" *Belbin v. Conrail (In re Paulsboro Derailment Cases)*, No. 13-784, 2014 U.S. Dist. LEXIS 5095, at *12-13 (D.N.J. Jan. 13, 2014) (citing *Keune v. Merck & Co. (In re Propecia (Finasteride) Prod. Liab. Litig.)*, No. 12-MD-2331, 2013 U.S. Dist. LEXIS 117375, at *43 (E.D.N.Y. May 17, 2013) ("*Keune*")). In *Keune*, the court recognized the complications that may arise from misjoinder of plaintiffs in large pharmaceutical actions, including that the plaintiffs' injuries may depend on many variables, such as "exposure to the drug, the patient's physical state at the time of taking the drug, and a host of other known and unknown factors that must be considered at trial with respect to each individual plaintiff. *Keune*, 2013 U.S. Dist. LEXIS 117375, at *43

The Third Circuit has not addressed the doctrine of fraudulent misjoinder. *See Saviour*, 2015 U.S. Dist. LEXIS 150793, at *17; *Vanny*, 2014 U.S. Dist. LEXIS 142910, at *630. Instead, courts are split within the District of New Jersey as to the doctrine's applicability. *Compare Vanny*, 2014 U.S. Dist. LEXIS 142910, at *645 (declining to apply the doctrine of fraudulent misjoinder absent any direction from the Third Circuit, highlighting the unresolved issue of whether Federal Civil Procedure Rule 20 applied in analyzing the joinder of the parties, or if the forum state's

joinder rule would apply) *with Welsh v. Merck Sharpe & Dohme Corp. (In re Fosamax Prods. Liab. Litig.)*, No. 2243, 2012 U.S. Dist. LEXIS 48114, at *19 (D.N.J. Apr. 2, 2012) ("*Welsh*") (applying the doctrine of fraudulent misjoinder, noting it was "particularly relevant to large pharmaceutical product liability actions").

The Court is persuaded by Judge Pisano's reasoning in *Welsh*. In *Welsh*, the court applied the doctrine in the context of a pharmaceutical litigation, and applied a two-step analysis, first determining whether the claims were misjoined under Fed. R. Civ. P. 20, and then determining whether the joinder was egregious.[4] *Id.* at *9-*10. The court determined first that the claims had been misjoined, because the plaintiffs alleged unspecific injuries which made it impossible to determine how the plaintiffs shared any connection. *Id.* at *15. The court next determined that the misjoinder was egregious, because:

> [t]he action involves an attempt to join 91 plaintiffs from 28 different states. Yet only three Plaintiffs are citizens of Missouri where the complaint was filed, and none of the nonresident Plaintiffs claims any connection with Missouri. *See also In re Diet Drugs*, 1999 U.S. Dist. LEXIS 11414, 1999 WL 55484, at *3 (finding misjoinder was fraudulent where only two of nine plaintiffs were citizens of the state where the suit was originally filed). Additionally, seventy-three (73) Plaintiffs are completely diverse from the Defendants against whom they make allegations.

*Welsh*, 2012 U.S. Dist. LEXIS 48114, at *15-17.

Here, the Court will first determine if joinder was proper; however, it is not clear which permissive joinder rule is applicable – whether this Court should apply the Federal Rule of Civil Procedure permissive joinder rules (Fed. R. Civ. P. 20), or the New Jersey State Court civil procedure rules for permissive joinder (N.J. Ct. R. 4:29). Neither party has briefed that issue;

---

[4] The Welsh court noted that there is "disagreement among courts as to whether federal or state permissive joinder rules govern," but determined that the issue was not an issue as the state's permissive joinder rule was substantively identical to Fed. R. Civ. P. 20(a). *Welsh*, 2012 U.S. Dist. LEXIS 48114, at *19.

6

however, the Federal and New Jersey rules are substantially similar: "Persons may join in one action as plaintiffs if: (a) they assert any relief jointly, severally, or . . . arising out of the same transaction, occurrence, or series of transactions or occurrences the right to relief asserted by the plaintiffs or against the defendants arises out of or in respect of the same transaction, occurrence, or series of transactions or occurrences and involves any question of law or fact common to all of them." Fed. R. Civ. P. 20; *see also* N.J. Ct. R. 4:29-1.

The Court first determines that Plaintiffs' claims have been misjoined. Plaintiffs allege that after receiving the Zostavax vaccine, they contracted a strain of herpes zoster or shingles. (*See* Breitner Compl., ECF No. 1-1). However, the injuries manifested at different times, with each Plaintiff likely suffering different complications and different unknown recurring health issues. The dates of injury range from 2007 to 2015. (*See* ECF No. 1-3). As the Court in Welsh noted, complicated causation questions pervade drug product liability claims, which often require divergent questions of law and fact. *See Welsh*, U.S. Dist. LEXIS 48114, at *15. Here, there has been no allegation that the Plaintiffs received vaccinations from the same lot number, at the same time, and by the same health-care providers. Instead, it is clear that the Plaintiffs received the Zostavax vaccine in different years, different states, and by different health-care providers.

In addition, the orders entered by the other two trial courts are compelling. For example, in the New Jersey Zostavax Multicounty Litigation, the Superior Court of New Jersey has already ordered that "[e]ach action shall be limited to one plaintiff and/or a related household of plaintiffs. . . . All Plaintiffs listed in complaints prior to this order must move to bifurcate their claims and refile the complaints individually." (ECF No. 12-2, at ¶ 8(c)). Even further, on October 3, 2018, the transferee Judge sitting in the Eastern District of Pennsylvania ordered that "No action shall be filed with more than one plaintiff . . . All complaints heretofore filed which name more

7

than one plaintiff, and where applicable, a derivative plaintiff, are severed." (ECF No. 12-3, at ¶ 1-2). Accordingly, Plaintiffs were not injured as a result of the same transaction or occurrence, and the alleged injuries sustained and endured differ with each Plaintiff.[5]

Second, the Court determines that Plaintiffs' joinder was egregious. Similar to *Welsh*, the complaint here was structured in a way to defeat diversity jurisdiction. In this action, there are eighty-nine plaintiffs. Only Plaintiffs Andree Dupree, Patricia Jardine, Ruth Cooleen, Mary Thompson, and Faith Cowart assert that they are citizens of New Jersey, and thus are non-diverse. (*See* Breitner Compl., at ¶ 11, 21, 37, 52, 62). In contrast, defendants Merck & Co., Inc. ("Merck") and Merck Sharp & Dohme Corp. ("MSD") are New Jersey corporations with principal places of business in Kenilworth, New Jersey. (See id. at ¶ 98-99). Defendant McKesson Corp. is a Delaware corporation with its principal place of business in Sacramento, California. (Id. at ¶ 100).

There are only five Plaintiffs whose joinder in this action would divest this Court of diversity jurisdiction. Accordingly, the non-diverse Plaintiffs, Andree Dupree, Patricia Jardine, Ruth Cooleen, Mary Thompson, and Faith Cowart, are severed from this action, and their cases are remanded back to the Superior Court of New Jersey. Regarding the remaining Plaintiffs' claims, the Court finds the claims as alleged do not arise out of the same transaction, occurrence or series of transactions or occurrences and that these claims shall be severed.

The court next determines that Defendant's removal of this action is proper. The rational for permitting removal is set forth in *Anderson v. Merck*, et al., No. 18-15844, ECF No 20. For

---

[5] It is also important to note that this case is 1 of 107 pending motions to remand. In 103 of these cases, there is a single plaintiff. In 4 of these cases, there are 402 additional plaintiffs. Thus, before the Court there is 509 cases, of which the Court is credited with adjudicating only 107. It is clear that the Plaintiffs were joined in these four cases to either defeat diversity, or to avoid paying a filing fee. In Superior Court of New Jersey, Law Division, Civil Part, plaintiffs are required to pay a $250 filing fee. To file a case in federal court, or to remove a case from state court to federal court, plaintiffs or defendants are required to pay a $400 filing fee. Here, filing fees were only paid for 107 of these cases, which amounts to roughly 20% of the Plaintiffs involved.

the reasons expressed therein, Plaintiffs' motion to remand in this matter is denied, except for the New Jersey residents.

**ORDER**

This matter is before the Court on Plaintiffs' motion to remand Plaintiffs' complaint; and the Court having considered the briefs and oral arguments of the parties; and for the reasons set forth above,

IT IS on this day 24th of January, 2019;

ORDERED that Plaintiffs' motion to remand (ECF No. 7) is DENIED; and it is further

ORDERD Plaintiffs Andree Dupree, Patricia Jardine, Ruth Cooleen, Mary Thompson, and Faith Cowart are severed from this action, and their cases remanded to the Superior Court of New Jersey, for lack of subject matter jurisdiction; and it is further

ORDERED that case number 18-15982 will proceed only as to the claims of Plaintiff Alvin Breitner, and the claims of the remaining Plaintiffs are hereby severed from case number 18-15982. The remaining Plaintiffs may refile their severed cases individually with this court, along with the requisite filing fee; and it is further

ORDERED that Plaintiff Alvin Breitner may file an amended complaint within 30 days of this Order.

_____
PETER G. SHERIDAN, U.S.D.J.